**SO ORDERED.**

**SIGNED this 17th day of January, 2017.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge

_____

**For online use, but not print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **In Re:** | |
| **CHRISTIAN ROBERT KEELEY,** | **CASE NO. 14-22843** |
| | **CHAPTER 7** |
| **DEBTOR.** | |
| | |
| **SONYA ORMSBY,** | |
| **PLAINTIFF,** | |
| **v.** | **ADV. NO. 15-6010** |
| **CHRISTIAN ROBERT KEELEY,** | |
| **DEFENDANT.** | |

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S OBJECTIONS TO DEBTOR'S DISCHARGE**
**UNDER 11 U.S.C. § 727(a)(2)(A) AND (a)(4)(A)**

The matter before the Court is the adversary proceeding filed by Plaintiff Sonya

Ormsby objecting to the discharge of Debtor Christian Keeley under 11 U.S.C.

§ 727(a)(2)(A) and (a)(4)(A).  A full-day evidentiary hearing was held.  Plaintiff appeared

pro se.  Debtor appeared in person and by counsel, Bradley D. McCormack.  The parties

stipulated to the jurisdiction of the Court, and consented to trial and the entry of a final

order by this Court.  Debtor also stipulated that Plaintiff is a creditor with standing to

pursue her objections to his discharge.

Having carefully considered the testimony, the exhibits, the arguments of the

parties, and the standards for the denial of a discharge, the Court is now ready to rule.

For the following reasons, the Court finds Debtor's discharge should not be denied.

**FINDINGS OF FACT**

Plaintiff, a self-described "former life partner" of Debtor from approximately 1999

through 2008, is the holder of a judgment entered by a Pennsylvania court in 2010 against

Debtor for the recovery of $19,261.01 in personal loans.[1]  Plaintiff vigorously pursued

collection.  She registered the judgment in Kansas in 2013, and had several garnishment

orders issued.

Debtor has a college degree in psychology and has worked as a contractor since

1983.  He moved to Kansas in 2009, and in 2010, purchased a home for cash using funds

withdrawn from his wife's retirement savings.  For two and a half years prior to filing his

---

[1] Doc. 1 at 2-3.

2014 bankruptcy petition, he worked as an independent contractor for Handyman Connection.  In 2013, Plaintiff garnished Debtor's bank account, and in 2014, she served both wage and non-wage garnishments on Handyman Connection.  Debtor filed for bankruptcy relief under Chapter 7 on December 4, 2014.

Debtor filed his Schedules and Statement of Financial Affairs (SOFA), signed under oath, with his petition.[2]  The estimated number of his creditors was between 1 and 49, the estimated value of his assets was between $50,000 and $100,000 ($85,000 of which was the value of his exempt homestead), and his estimated liabilities were between $0 and $50,000.  The Means Test calculations show that Debtor's income is below the median for a family of two in Kansas.

Plaintiff performed a significant investigation of Debtor's financial affairs and gathered numerous relevant documents.  Through questioning of Debtor, she established that there were several omissions from the December 2014 schedules.  Debtor's Schedule B, item 23, "Licenses, franchises, and other general intangibles," had an X in the column for "None."  In fact, Debtor is the holder of contractor's licenses issued by Johnson and Wyandotte Counties.  Debtor's Schedule B, item 29, "Machinery, fixtures, equipment, and supplies used in business," listed only five items plus "misc handheld tools," valued at a total of $1,000.  Debtor testified that he actually owned additional tools and equipment, and the total value of all his tools and equipment was $2,700.  Plaintiff

---

[2] Case no. 14-22843, doc. 1.

3

attempted to prove that there were additional omissions from, and errors and inconsistencies in Debtor's Schedules but was unsuccessful.

On Debtor's SOFA, question 10, "Other transfers" made within two years before filing bankruptcy, was marked "None." In fact, Debtor had sold a 1971 Oldsmobile on October 24, 2014, for $7,500. Debtor also testified that during the two-year period covered by question 10 and after he had closed his checking account in March 2013 because of garnishments, he had made cash transfers to his non-debtor wife's checking account. But no evidence was presented to show the amounts or dates of these transfers. Debtor's wife's account was the source of the funds used to pay their family living expenses, such as food and utilities.

Question 18 on the SOFA required Debtor to report information about any businesses in which he had an interest or was an officer, and any self-employment he had engaged in within six years before he filed bankruptcy, and it was marked "None." In fact, two businesses, Plains Lumber Company, Inc., and Keeley Construction Services, LLC, should have been disclosed. In addition, during the six-year window, Debtor had conducted business under two trade names, Christian Keeley d/b/a Keeley Construction and Christian Keeley d/b/a C&R Construction, and been self-employed under his own name.

At the meeting of Debtor's creditors held pursuant to § 341, Debtor testified that his December 4, 2014 Schedules and SOFA were true and correct. As the above facts demonstrate, this was proven to be false.

4

At his creditors' meeting, Debtor also testified that in November 2014, less than a month before the filing of his petition, he had collected accounts payable in the amount of approximately $2,500 and used the funds to pay back real estate taxes. If this money was not from Handyman Connection, it was not included in Debtor's monthly income reported on Schedule I, which was based solely on funds he received from Handyman Connection. But Plaintiff failed to provide evidence of precisely when the funds were received and the source of the payments. Thus, Plaintiff has not proven that Debtor received $2,500 in 2014 that should have been but was not revealed on Schedule I, or elsewhere. Further, Plaintiff did not attempt to prove that Debtor had any other additional unreported income.

Plaintiff filed her complaint objecting to Debtor's discharge on March 9, 2015. Thereafter, on various dates, Debtor amended his initial bankruptcy pleadings. On July 2, 2015, he filed an amended SOFA in which he disclosed the sale of the 1971 Oldsmobile in response to question 10, and stated that a portion of the proceeds had been paid to Wyandotte County.[3] He also listed interests in Plains Lumber Company, Inc., Christian Keeley d/b/a C&R Construction, and Keeley Construction Services, LLC, in response to question 18. On July 6, 2015, Debtor filed an amended Schedule B which added under question 13, "Stock and interests in incorporated and unincorporated businesses," his 99% interest in Keeley Construction Services, LLC, which he stated had no value.[4] He

---

[3] *Id.*, doc. 36.

[4] *Id.*, doc. 39.

5

also added his two contractor's licenses in response to question 23 and stated they had no value.  His amended response to question 29, "Machinery, fixtures, equipment, and supplies used in business," added numerous items to those reported initially and raised the total current value to $2,700 rather than the $1,000 reported on his initial Schedule B.  On July 7, 2015, Debtor filed an amended Schedule C that increased the value of his tools of trade exemption from $1,000 to $2,700.[5]  On October 22, 2015, Debtor filed a second amended Schedule B that added under question 35, "Other personal property of any kind not already listed," "website domain http//:www.keeleyinc.com," of unknown value.[6]  The October filing also included an amended SOFA, which omitted the statement that had been on the first amended SOFA that said a portion of the proceeds from the sale of the 1971 Oldsmobile had been paid to Wyandotte County, and added Christian Keeley d/b/a Keeley Construction and Christian Keeley to the businesses and self-employment reported under question 18.

Debtor testified that he provided information to his counsel for use in preparing his schedules by completing a questionnaire in about 2 hours while he was at his attorney's office.  He also provided copies of tax returns and 1099 tax forms.  He did not take the questionnaire home.

---

[5] *Id.*, doc. 41.

[6] Id., doc. 51.  Plaintiff attempted but failed to prove that Debtor had engaged in on-line business advertising using multiple web sites and services.

6

When testifying, Debtor offered explanations for the failure to list on his original SOFA the companies and self-employment that were added by the amendments. He testified that he did not report Plains Lumber Company, Inc., a Pennsylvania company, because he was not an owner. Rather, as of December 4, 2014, he was the secretary of the company, which was owned 100% by his father. Debtor said that although the company remains a registered legal entity, it only did business from March 1, 1993, to November 1, 2000, when it ceased operations. Before moving to Kansas, Debtor conducted business in Pennsylvania through Keeley Construction Services, LLC, from 2001 through 2006, and under the name Christian Keeley d/b/a C&R Construction from 2007 to 2009. He testified that he did not list the LLC on his Schedules because he did not think about it since the business had closed in 2006. These three companies were included in the SOFA amendment filed in July 2015; Debtor testified that he did not know why he waited seven months to amend his SOFA.

Debtor testified that he did not report the 1971 Oldsmobile in his initial Schedules because he had sold it before December 2014. He also testified that the list of tools in his initial Schedule B was incomplete because he just didn't think of all his tools, many of which he had not used since he moved to Kansas. When Debtor deposited his funds in his wife's bank account, he did not intend to give her possession of his property.

The Chapter 7 Trustee has not attempted to recover any of the assets that were omitted from Debtor's Schedules and SOFA, or sought to deny Debtor's discharge.

**DISCUSSION.**

**A. Debtor's discharge should not be denied under § 727(a)(4)(A).**

When objecting to Debtor's discharge, Plaintiff relies primarily upon the omissions from Debtor's initial Schedules and SOFA as constituting knowing and fraudulent false oaths within the meaning of § 727(a)(4)(A). That subsection of the Bankruptcy Code provides that a debtor shall be granted a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case — (A) made a false oath or account." The purpose of § 727(a)(4)(A) "is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs."[7] "In order to deny a debtor's discharge pursuant to this provision, a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact."[8] "A common instance of 'false oath' is when a debtor declares that the schedule of property is 'true and correct' and it appears that the debtor has knowingly and fraudulently omitted assets from it."[9] "[A]n honest error or mere inaccuracy is not a proper basis for denial of discharge."[10] Therefore, "[g]enerally speaking, a debtor who, without fraud, fails to

---

[7] *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).

[8] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997) (citing *In re Hadley*, 70 B.R. 51, 54 (Bankr. D. Kan. 1987)).

[9] 6 *Collier on Bankruptcy*, ¶ 727.04[2] at 727-38 to -39 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2016).

[10] *In re Brown*, 108 F.3d at 1295.

8

schedule property of no value is not guilty of making a false and fraudulent oath."[11]  The

burden of proof in discharge litigation under § 727(a)(2)(A) is on the plaintiff to prove

each element by a preponderance of the evidence.[12]

In this case, it is undisputed that Debtor made incorrect entries on and omitted

required information from the Schedules and SOFA, even though he made an oath that

such documents were true and correct.  The issues facing the Court are whether these

statements were fraudulent and related to material facts.

Because ordinarily the debtor will be the only person who can testify directly

concerning intent and he is unlikely to admit that his intent was fraudulent, "fraudulent

intent may be deduced from the facts and circumstances of a case."[13]  Although mere

mistake or inadvertence, an honest error or mere inaccuracy, is not a proper basis for

denying a discharge, reckless indifference to the truth is equivalent to fraud.[14]  "Reckless

disregard means 'not caring whether some representation is true or false.'"[15]

The Court finds that Plaintiff has not proven that Debtor acted with fraudulent

intent when he omitted items from his initial Schedules and SOFA.  Based upon the

circumstances and Debtor's testimony, the Court finds that the omissions were simple

---

[11] 6 *Collier on Bankruptcy*, ¶ 727.04[2] at 727-39.

[12] *Cadle Co. v. King (In re King)*, 272 B.R. 281, 288 (Bankr. N.D. Okla. 2002).

[13] *Job v. Calder (In re Calder)*, 907 F.2d 953, 956 (10th Cir. 1990).

[14] *In re Tully*, 818 F.2d at 112.

[15] *Freelife Int'l, LLC, v. Butler (In re Butler)*, 377 B.R. 895, 922-23 (Bankr. D. Utah 2006) (*quoting Structured Asset Servs., L.L.C., v. Self (In re Self)*, 325 B.R. 224, 248 (Bankr. N.D. Ill. 2005)).

9

inaccuracies. Debtor's testimony reflected his concern that his disclosures be accurate.

Plaintiff's evidence does not prove that Debtor failed to file complete and accurate

Schedules to promote his economic self-interest or with the intent to conceal the truth

from his creditors. The omitted licenses have no value, the proceeds of the sale of the

Oldsmobile had been spent prepetition, the total value of Debtor's tools of trade is less

than the Kansas exemption allows, and the three omitted businesses have not been active

for several years. For the items other than the tools of trade, Debtor wrongly believed

that the information was not required. After Plaintiff filed her complaint and propounded

discovery requests in support of her allegations, Debtor amended his Schedules and

SOFA. Debtor's omissions were honest errors or inaccuracies resulting from his failure

to pay full attention to what was required to be disclosed and to remember the full extent

of his ownership of tools. The omissions do not evidence a reckless disregard for the

truth.

The second element in dispute is whether Debtor's omissions were material. For

purposes of § 724(a)(4)(A), an omission of information is material if it "concerned the

existence and disposition of" Debtor's property.[16] "The subject matter of a false oath is

'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's

---

[16] *In re Calder*, 907 F.2d at 955.

business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[17]  Debtor's omissions were material.

Although Plaintiff did an excellent job as a pro se litigant in the presentation of her case, the evidence is simply insufficient to convince the Court that Debtor "knowingly and fraudulently" made a false oath in connection with his case.  There is no doubt that there were false oaths regarding material matters, but the evidence does not persuade the Court that Debtor's omissions were anything other than honest errors and inaccuracies.

**B.  The Debtor's discharge should not be denied under § 727(a)(2)(A).**

Section 747(a)(2)(A) provides that a bankruptcy court may deny a debtor discharge when "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . . property of the debtor, within one year before the date of the filing of the petition."  "[A] party objecting to a discharge under this section 'must show by a preponderance of the evidence that (1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor.'"[18]

Plaintiff's contention that Debtor's discharge should be denied under § 727(a)(2)(A) relies on Debtor's admission that he closed his own bank account in March 2013 because of garnishment activity, and thereafter, until he filed for bankruptcy

---

[17] *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)(quoted with favor in *In re Calder*, 907 F.2d at 955).

[18] *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008) (*quoting In re Brown*, 108 F.3d at 1292).

11

relief, deposited some of his earnings in his wife's checking account.  But there is no evidence of the amounts or the dates of such transfers.  Further, there is no evidence that the transfers were made with intent to hinder, delay, or defraud a creditor, rather than to preserve the funds for the payment of business and living expenses.

**CONCLUSION.**

The Court therefore finds that Plaintiff has failed to establish the elements necessary for the denial of Debtor's discharge under either § 727(a)(4)(A) or (a)(2)(A). Debtor is entitled to a judgment in his favor on all of the allegations of the complaint.

**IT IS SO ORDERED.**

# # #